UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

GABRIEL WOLFE                                                                                              PLAINTIFF

v.                                          No. 2:22-cv-02048

JOHNSON COUNTY, AR; JOHNSON COUNTY
SHERIFF'S DEPARTMENT; SHERIFF JIMMY
STEPHENS; DEPUTY JORDAN HAWKINS;
DEPUTY CHRISTOPHER ROGERS                                                             DEFENDANTS

**OPINION AND ORDER**

Before the Court are Defendants' motions for summary judgment (Docs. 18, 21), briefs in support (Docs. 19, 23), and statements of facts (Docs. 20, 22); Plaintiff's responses (Docs. 24, 27), briefs in support (Docs. 26, 29), and responses to the statements of facts (Docs. 25, 28); and Defendants' replies (Docs. 30, 31) to Plaintiff's responses. The motions for summary judgment will be DENIED as to Defendants Hawkins and Rogers and GRANTED IN PART as to Johnson County and the official defendants.

**I.     Background**

On October 22, 2021, Plaintiff Gabriel Wolfe was a passenger in a car stopped for a traffic violation. (Doc. 2, p. 3; Doc. 22, p. 1). Wolfe refused to show his driver's license to Deputy Jordan Hawkins of the Johnson County Sheriff's Department. (Doc. 22, p. 1). Hawkins mistakenly believed that failure to identify oneself to law enforcement was grounds for arrest. *Id.* In fact, failure to identify oneself is one of 14 non-exclusive factors governing whether an officer has reasonable suspicion to briefly[1] detain a suspect for investigatory purposes. Ark. Code Ann. § 16-81-203 (West 2023); Ark. R. Crim. P. 3.1. Hawkins called his supervisor, Deputy

---

[1] "[F]or a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances." Ark. R. Crim. P. 3.1.

1

Christopher Rogers. (Doc. 22, p. 2). When Wolfe still refused to provide identification, the two deputies handcuffed Wolfe and transported him to the Johnson County Detention Center in the back of Hawkins' patrol car. *Id.* Shortly afterward, Rogers realized that Hawkins had been mistaken about the law and that there had been no reasonable suspicion of Mr. Wolfe. *Id.* at 2–3. At Rogers' instruction, Hawkins released Wolfe, apologized, offered him a ride to his destination, and explained that the mistake was due to a "gray area" of the law. *Id.* at 3.

Wolfe sued Hawkins and Rogers in both their individual and official capacities; Johnson County Sheriff Jimmy Stephens in his official capacity; the Johnson County Sheriff's Department; and Johnson County, Arkansas. (Doc. 2). He claims excessive use of force under 42 U.S.C. § 1983, intentional infliction of emotional distress, false imprisonment, and false arrest. *Id.* at 4–5. All defendants have moved for summary judgment. Johnson County, on behalf of the official-capacity defendants, argues that it cannot be held liable in the absence of an unconstitutional county policy or custom, which it denies exists. (Doc. 19, p. 3). Hawkins and Rogers assert qualified immunity on the basis of a reasonable mistake of law. (Doc. 21, p. 1).

## II. Legal Standard

On a motion for summary judgment, the burden is on the moving party to show that there is no genuine dispute of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the movant has met his burden, the nonmovant must present specific facts showing a genuine dispute of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). For there to be a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A mere scintilla of evidence is insufficient to defeat

2

summary judgment and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate." *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010) (quotations and citations omitted).

### III. § 1983 Claims – Hawkins and Rogers

Hawkins and Rogers assert that qualified immunity bars liability for their reasonable mistake of law. Because the mistake of law was not a reasonable one, the Court disagrees.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity applies to mistakes of law, fact, or both. *Id.* To overcome qualified immunity, "the plaintiff must show: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)).

#### A. Deprivation of Rights

"It is clearly established that a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment." *Baribeau v. City of Minneapolis,* 596 F.3d 465, 478 (8th Cir. 2010). However, the Supreme Court has indicated that mistakes of law as to whether probable cause exists do not violate the Fourth Amendment. *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014). The caveat is that "the mistakes must be those of reasonable men." *Id.* at 61 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). "Thus, an officer can gain no Fourth Amendment

3

advantage through a sloppy[ ]study of the laws he is duty-bound to enforce." *Heien*, 574 U.S. at 67.

In *Heien*, a car was pulled over for having a broken brake light. *Id.* at 57. Due to the occupants' suspicious behavior, and with their consent, an officer searched the car and discovered a bag of cocaine. *Id.* at 58. The North Carolina Court of Appeals overturned one passenger's conviction for trafficking in cocaine because it found the stop was unlawful, holding that the state's brake-light law required only one working brake light because the statute only mandated "a stop lamp" in the singular. *Id.* at 59. The North Carolina Supreme Court reversed, noting that the officer was "reasonably mistaken" about the law, especially since a nearby code provision mandated that "all originally equipped rear lamps" be in order. *Id.* (The Court of Appeals ruled that a "stop lamp" did not fall into this category). *Id.* The United States Supreme Court affirmed, holding that the officer's reading of the statute was reasonable, especially since the provision at issue had never been construed by an appellate court before the arrest. *Id.* at 67–68.

Hawkins and Rogers urge that the mistake of law at issue here is as reasonable, if not more reasonable, than the one in *Heien*. (Doc. 31, p. 2). This case, however, is a far cry from *Heien*, and not in a way that helps the deputies. *Heien* involved an objectively reasonable reading of North Carolina traffic laws which were not interpreted otherwise until after the arrest. Besides this reasonable misreading of the law, there is no indication that any element of the stop, search, or arrest in *Heien* was improper. Here, however, the deputies interpreted *one* factor in a *fourteen-plus-factor* inquiry concerning a *15-minute* investigative detention authority as giving them probable cause to arrest and jail a man.[2] This is not hair-splitting as to whether a second brake

---

[2] The problem becomes more apparent when the other 13 factors are considered. Ark. Code Ann. § 16-81-203 does allow officers to take into account "[t]he apparent effort of the suspect to avoid identification or confrontation by a law enforcement officer." Ark. Code Ann. § 16-81-

4

light is an "originally equipped rear lamp." This can only be characterized as the product of the "sloppy study of the laws" that *Heien* explicitly excluded from its scope.

Taking all facts in the light most favorable to Wolfe, there was no reasonable mistake of law giving rise to Wolfe's arrest. Accordingly, Wolfe has shown that his Fourth Amendment rights were violated for purposes of the qualified immunity analysis.

### B. Clearly Established

Qualified immunity does not apply where the conduct at issue violates clearly established rights of which a reasonable person would have known. *Pearson*, 555 U.S. at 231. Rights are clearly established where "prior cases would have put a reasonable officer on notice" of the right at issue. *Williams v. City of Burlington*, 27 F.4th 1346, 1352 (8th Cir. 2022). As discussed above, no reasonable officer could have concluded that probable cause existed to arrest Mr. Wolfe. "It is clearly established that a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment." *Baribeau*, 596 F.3d at 478. If *Baribeau* were not enough to put a reasonable officer on notice that Wolfe's arrest violated the Fourth Amendment, *Stufflebeam v. Harris*, 521 F.3d 884 (8th Cir. 2008), is. There, the Eighth Circuit considered "whether Arkansas law permits a police officer to arrest a person for refusing to identify himself when he is not suspected of other criminal activity and his identification is not needed to protect officer safety or to resolve whatever reasonable suspicions prompted the officer to initiate an on-going traffic stop" only to ultimately "conclude it does not." *Id.* at 887. Finally, lest there be any uncertainty, the Supreme Court has categorically stated that "an officer may not arrest a suspect for failure to identify himself if the

---

203(14). But it also lists considerations including "(1) The demeanor of the suspect," "(6) The time of day or night the suspect is observed," and "(8) The particular streets and areas involved." No reasonable officer would consider a nervous disposition, a late-night or early-morning trip, or presence in a bad part of town to be arrestable offenses in and of themselves.

5

request for identification is not reasonably related to the circumstances justifying the stop." *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 188 (2004). These three cases, all of which predate Wolfe's 2021 arrest, are surely enough to put any reasonable officer on notice. Accordingly, Wolfe's right to be free from arrest in these circumstances was clearly established at the time.

Because the rights allegedly violated were clearly established at the time of the arrest, qualified immunity will be denied.

## IV. § 1983 Claims – Official Defendants

Johnson County, on behalf of all defendants sued in their official capacity, argues that the County is not liable under 42 U.S.C. § 1983. The Court agrees.

"When a public employee is sued in his official capacity, the plaintiff is suing 'only the public employer and therefore must establish the municipality's liability for the alleged conduct.'" *Furlow v. Belmar*, 52 F.4th 393, 406 (8th Cir. 2022) (quoting *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016)). "To make the governmental entity liable for the employee's wrongdoing under 42 U.S.C. § 1983, a plaintiff needs to prove his or her 'constitutional rights were violated by an action pursuant to official municipal policy or misconduct so pervasive among non-policymaking employees of the municipality as to constitute a custom or usage with the force of law." *Furlow*, 52 F.4th at 406 (quoting *Mitchell v. Kirchmeier*, 28 F.4th 888, 899 (8th Cir. 2022) (internal quotations omitted)). "Generally, an isolated incident of police misconduct by subordinate officers is insufficient to establish municipal policy or custom." *Wedemeier v. City of Ballwin*, 931 F.2d 24, 26 (8th Cir. 1991).

Here, Wolfe has presented no evidence beyond this single incident to demonstrate a policy or custom of the County. He notes that no official arrest or booking record was ever made in his case because he was released before being processed. (Doc. 26, p. 4). He claims that if other

individuals were treated the same way, there would be no evidence of their arrests, either. *Id.* And he claims that it is implausible for the Chief Deputy, who testified that no other passenger had ever been arrested for failure to show ID, to know of every arrest the Johnson County Sheriff's Department ever made. *Id.* But this speculation about possible other arrests amounts, at best, to the "mere scintilla" of evidence insufficient to defeat summary judgment in *Brunsting*. 601 F.3d at 820. Wolfe notes that the Department's policies are silent on when identification is required, but that Hawkins was trained that he could not demand information absent a legal obligation to provide it. (Doc. 26, p. 5). Neither of these facts supports a policy or custom of arresting people for failing to identify themselves.

Because Wolfe has failed to present evidence to support his cause of action under 42 U.S.C. § 1983 against the County, the County's motion for summary judgment will be granted.

**V.      State Claims**

Johnson County requests summary judgment "with respect to all claims against the County, including all official capacity claims." (Doc. 18, p. 1). Hawkins and Rogers request that the Court "dismiss this case with prejudice" (Doc. 21, p. 2). While these requests presumably cover Wolfe's state-law claims, the defendants do not discuss the state-law claims in their summary judgment motions. "The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact." *Uhiren v. Bristol-Myers Squibb Co.*, 346 F.3d 824, 827 (8th Cir. 2003). Because the defendants here have failed to do so with respect to Wolfe's state-law claims, summary judgment is inappropriate. This goes for Johnson County as well as the deputies. *Robinson v. White County*, 459 F.3d 900, 902 (8th Cir. 2006) ("Because Sheriff Garrett is an employee of White County, and we denied summary judgment to Sheriff Garrett, White County may be subject to suit under the state law claims for Sheriff Garrett's conduct.").

Accordingly, the Court will not grant summary judgment on Wolfe's claims for intentional infliction of emotional distress, false imprisonment, and false arrest.

## VI. Conclusion

IT IS THEREFORE ORDERED that Johnson County's motion for summary judgment (Doc. 18) is GRANTED as to the claim under 42 U.S.C. § 1983 and DENIED as to all other claims. Deputies Hawkins and Rogers' motion for summary judgment (Doc. 21) is DENIED.

IT IS SO ORDERED this 2nd day of March, 2023.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE